ORIGINAL

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: 31
DATE FILED: 8-24-09

97943

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------x
RACHEL ROTHSTEIN, et al.,           :
                                    :
              Plaintiffs,           :    08 Civ. 4414 (JSR)
                                    :
      -v-                           :    OPINION AND ORDER
                                    :
UBS AG,                             :
                                    :
              Defendant.            :
------------------------------------x

JED S. RAKOFF, U.S.D.J.

The sympathy one feels for the plaintiffs in this case cannot disguise the fact that their counsel has attempted to stretch the law beyond all recognizable limits. Accordingly on March 6, 2009, the Court issued a "bottom-line" Order granting defendant's motion to dismiss with prejudice plaintiffs' claims that defendant UBS AG ("UBS") aided and abetted international terrorism (Count One) and aided and abetted violations of customary international law (Count Two).[1] This Opinion and Order sets forth the reasons for that ruling and directs the entry of final judgment.

The plaintiffs here are forty-five victims and/or families of victims of violence perpetrated by the terrorist organizations Hamas and Hezbollah in the form of a bombing in Jerusalem, Israel on July 30, 1997; a bombing in Jerusalem, Israel on September 4, 1997; a bombing near Neve Yamin, Israel on March 28, 2001; a

---

[1] Plaintiffs had previously withdrawn their other claims, which were for negligence under Israeli law (Count Three), for breach of statutory duty under Israeli law (Count Four), and for aiding and abetting these violations under Israeli law (Count Five). See Order, October 17, 2008.

bombing in Jerusalem, Israel on August 9, 2001; a bombing in Jerusalem, Israel on December 1, 2001; a rocket attack on Safed, Israel on July 13, 2006; and further rocket attacks on Safed, Israel between July 13, 2006 and July 22, 2006. Defendant UBS, a large international bank, concedly had no direct involvement in those attacks. But plaintiffs allege that UBS indirectly assisted the Government of Iran in financially supporting Hamas and Hezbollah and consequently is liable to plaintiffs for compensatory and punitive damages pursuant to 18 U.S.C. § 2333 of the Antiterrorism Act (Count One) and under customary international law (Count Two).

The plaintiffs premise these assertions on the admissions made by UBS itself when, in June, 2003, it disclosed that it had transferred U.S. currency to Iran and to Iranian "counterparties," in violation of regulations issued by the U.S. Office of Foreign Asset Control ("OFAC"). Am. Compl. ¶¶ 72, 82. In connection with these violations, UBS paid a $100 million civil monetary penalty to the U.S. government in May, 2004. See id. ¶ 82. Building on these admissions, plaintiffs allege that the Iranian government is a recognized sponsor of terrorism and has funded and supported Hamas, Hezbollah, and other Palestinian terrorist organizations; that these terrorist organizations require U.S. cash dollars to carry out their activities; and that UBS's involvement in banknote transactions with Iranian counterparties had the effect of

providing U.S. cash dollars to the Iranian government, which, in turn, supplied the aforementioned terrorist organizations with U.S. cash dollars that were used to facilitate terrorist acts. This indirect facilitation, plaintiffs argue, makes UBS liable to plaintiffs for the harms they suffered at the hands of the terrorist groups.

This extended chain of inferences, however, is far too attenuated to provide plaintiffs with sufficient standing to bring this action under federal law. See Allen v. Wright, 468 U.S. 737, 750 (1984) (standing requires that the injury be "fairly traceable" to the alleged actions of the defendant); Simon v. E. Ky. Welfare Rights Org., 426 U.S. 26, 42-43 (1976) (standing is not established where injury results from "the independent action of some third party not before the court"); see also Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 545 (2007) (from a pleading perspective, "[f]actual allegations must be enough to raise a right to relief above the speculative level"); Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949-50 (2009) (affirming Twombly).

Specifically, plaintiffs, to establish standing here, must at a minimum allege facts that show a proximate causal relationship between UBS's transfers of funds to Iran and Hamas' and Hezbollah's commission of the terrorist acts that caused plaintiffs' injuries. This they have entirely failed to do.

Among many other deficiencies in the causal chain, the First Amended Complaint ("Am. Compl.") does not allege that UBS is a

3

primary or even relatively significant source of U.S. banknotes for the Iranian government. Moreover, cash dollars have multiple legitimate uses besides funding terrorism, and, as the amended complaint itself states, "[U.S.] cash dollars are a universally accepted currency and means of payment." Am. Compl. ¶ 55. Further still, there are no specific allegations showing that the terrorist groups here in question raise their funds from monies transferred from Iran. Without multiplying examples, the point is that plaintiffs' allegations here are far too speculative to provide the plausible indication of proximate causation necessary to establish plaintiffs' standing in this case.

Plaintiffs point to two cases in the Eastern District of New York that they claim support the adequacy of their inferential pleadings: Strauss, et al. v. Credit Lyonnais, S.A., No. 06-CV-0702, 2006 WL 2862704 (E.D.N.Y. Oct. 5, 2006) and Linde, et al. v. Arab Bank, PLC, 382 F. Supp. 2d 571 (E.D.N.Y. 2005). But, quite aside from the fact that these cases (and other relied on by plaintiffs) were decided before the more stringent pleading standards of Twombly and Iqbal were promulgated by the Supreme Court, both cases involved direct involvement between the defendant banks and the terrorist organizations or "fronts" those organizations directly controlled. No such direct relationships are alleged here. Plaintiffs' claims must therefore be dismissed for lack of standing.

Plaintiffs' alleged claims must also be dismissed for the independent reason that they fail to state a legal claim. Count

4

One is brought under the private right of action provision of the Antiterrorism Act, which provides in pertinent part that

> [a]ny national of the United States injured in his or her person property, or business <u>by reason of</u> an act of international terrorism, or his or her estate, survivors, or heirs, may sue therefor in any appropriate district court of the United States . . . .
>
> 18 U.S.C. § 2333(a) (emphasis supplied).

The "by reason of" language, ultimately derived from the Clayton Antitrust Act of 1914, 15 U.S.C. §§ 12-27, 52-53, has typically been construed to be synonymous with "proximate cause." <u>See, e.g.</u> <u>Holmes v. Sec. Investor Prot. Corp.</u>, 503 U.S. 258, 266 (1992) (in the context of Racketeer Influenced and Corrupt Organizations Act ("RICO")); <u>id.</u> at 268 ("a plaintiff's right to sue under § 4 [of the Clayton Act] required a showing that the defendant's violation not only was a 'but for' cause of his injury, but was the proximate cause as well") (citing <u>Associated Gen. Contractors of Cal., Inc. v. Carpenters</u>, 459 U.S. 519, 534 (1983)); <u>Anza v. Ideal Steel Supply Corp.</u>, 547 U.S. 451, 457 (2006) (citing <u>Holmes</u> in the context of RICO); <u>Bridge v. Phoenix Bond & Indem. Co.</u>, 128 S. Ct. 2131, 2143-44 (2008) (discussing the role of reliance in assessing proximate cause under <u>Holmes</u> in the RICO context). If the allegations here are so speculative

and attenuated as to deprive plaintiffs of standing, it follows a fortiori that they fail to adequately plead causation.

Furthermore, assuming arguendo that a defendant in a private action brought under the Antiterrorism Act can be held liable on an aiding and abetting theory,[2] such a theory would here require adequate allegations that the defendant not only knew that its funds would be used to sponsor terrorist acts by Hamas and Hezbollah, but also intended to do so. See, e.g., Boim v. Quaranic Literacy Institute and Holy Land Foundation for Relief and Development, 291 F.3d 1000, 1023 (7th Cir. 2002)(requiring plaintiffs to "prove that the defendants knew of Hamas' illegal activities, that they desired to help those activities succeed, and they engaged in some act of helping the illegal activities"); Boim v. Holy Land Foundation for Relief and Development, 511 F.3d 707, 716 (7th Cir. 2007) (reaffirming elements of aiding and abetting as stated in the first Boim case); Stutts, et al. v. De Dietrich Group, et al., No. 03-CV-4058, 2006 WL 1867060 (E.D.N.Y. June 30, 2006).

No such allegations are remotely made here. In fact, the Court cannot discern any substantive allegation in the amended complaint that adequately alleges intent in any form. Courts in

---

[2] But see Boim v. Holy Land Foundation for Relief and Development, 549 F.3d 685, 689 (7th Cir. 2008) ("statutory silence on the subject of secondary liability means that there is none; and section 2333(a) does not mention aiders and abettors or other secondary actors").

6

this circuit have dismissed aiding and abetting claims under the Antiterrorism Act precisely for failure to allege knowledge and intent. See, e.g., Weiss v. Nat'l Westminster Bank PLC, 453 F. Supp. 2d 609, 621-22 (E.D.N.Y. 2006); Stutts, at *6; see also Khulumani v. Barclay Nat'l Bank Ltd., 504 F.3d 254, 289 (2d Cir. 2007), aff'd mem. by an equally divided court sub nom. Am. Isuzu Motors, Inc. v. Ntsebeza, 128 S. Ct. 2424 (2008) (holding in a concurring opinion by Judge Hall that a claim for aiding and abetting requires proof that the defendant knew that the "tools, instrumentalities, or services" it provided would be used to commit an unlawful act).

As for the second cause of action for aiding and abetting violations under customary international law, while customary international law is considered part of federal common law, see The Paquete Habana, 175 U.S. 677, 700 (1900), there is a well-established "presumption in favor of preemption of federal common law whenever it can be said that Congress has legislated on the subject." In re Oswego Barge Corp., 664 F.2d 327, 335 (2d Cir. 1981). Thus, the second cause of action is swallowed by the first. Moreover, aiding and abetting under customary international law requires the same knowledge and intent as elsewhere, and, as noted, plaintiffs here fail to adequately plead such knowledge and intent. See Khulamani, 504 F.3d at 277; see also Presbyterian Church of Sudan v. Talisman Energy, Inc.,

453 F. Supp. 2d 633, 669 (S.D.N.Y. 2006) (requiring scienter to establish a claim of aiding and abetting in violation of international law).

Accordingly, for the foregoing reasons, the Clerk of the Court is directed to enter final judgment dismissing the plaintiffs' amended complaint in its entirety.

SO ORDERED.

_____
JED S. RAKOFF, U.S.D.J.

Dated:   New York, New York
         August 23, 2009